RECEIVED

JUN 06 2018

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

1  Yutz McDougal
2  Resident, under Jesse F. Swartz, Jr.
   201 8th St.
3  San Francisco, CA 94103
   yutzmcdougal@gmail.com
4  frank.wright9@gmail.com

5

6  IN THE UNITED STATES DISTRICT COURT

7  FOR THE NORTHERN DISTRICT OF CALIFORNIA

8

9  Yutz McDougal,                          ) CASE NO. **CV-** 18-80091-**MISC.**
        Plaintiff,                         )
10                                         ) **COMPLAINT**
   v.                                      )                            **CW**
11                                         )
12 Wilson, Sonsini, Goodrich & Rosati, P.C.; )
   Stanford University;                    )
13      Defendant(s).                      )
                                           )
14 _____ )

15 //

16



1

## I.    Introduction

2

3

This complaint is brought by Yutz McDougal (aka Jesse F. Swartz, Jr.) under an alias.   The

4

complaint includes facts and details from related court filings including, but not limited to, those

5

details found within exhibit 3 through exhibit 13 to this complaint.   Furthermore, plaintiff is subject

6

to a pre-filing order issued by Hon. Judge Claudia Wilken ("Judge Wilken").   See *In re: Wright* (N.D.

7

Cal.), No. 16-cv-505-CW.   On or about May 22nd, 2018, plaintiff e-mailed Judge Wilken's clerk's

8

office a 3-page written request to file a complaint against the parties named as defendants herein.   See

9

Ex. #1.   The clerk informed plaintiff that a written complaint must be sent to the clerk's office for

10

review.

11

12

## II.    Claims

13

(1)        Violation of Amend. XIV (U.S. Const.) remediable under 42 U.S.C. § 1983;

14

(2)        Others to be added/amended as may be evident from the record.

15

## III.    Facts in support of claims

16

The facts and legal argument supporting the claims within include a lifetime story involving

17

18

plaintiff and these two entities that is nearly unbelievable, save for the probability that same story is

19

true and accurate.   Relevant facts include, but aren't limited to: (A) plaintiff's father, holding same

20

name as plaintiff (Sr. as opposed to Jr. or "V" for "the fifth"), attended the U.S. Naval Academy c.

21

1969-1970 and plaintiff's grandfather was a medic in the U.S. Navy during the Korean War.   See also

22

Ex. #3; (B) plaintiff visited the Bay Area (Cal.) c. 1986 with his Great-Aunt R. Jean Swartz where

23

John A. Wilson, his wife Nancy and their children resided.   See also Ex. #3; (C) plaintiff attended a

24

private boarding school named Western Reserve Academy (1988-1992) under financial support

25

provided by John A. Wilson, one of the founders of Wilson, Sonsini, Goodrich & Rosati, P.C., a law

26

27

firm and defendant named herein.   Plaintiff has asserted that information he received relative to the

28

source of funding related to his education – and his education's intent - is not entirely accurate.  See

Ex. #3.  Plaintiff has theorized that the U.S. government paid for plaintiff's WRA educational

opportunity and embedded within his education, labor and personal life several difficult experiential

lessons linked to contextual legal wrongs, those wrongs important to U.S. governmental departments

including, but not limited to, the U.S. Dept. of Defense, U.S. Dept. of Justice, U.S. Dept. of Labor,

U.S. Dept. of Education, and the U.S. Dept. of Health & Human Services.  See, again, Ex. #3 to this

complaint; (D) a federal criminal action was tried in N.D. Ohio by the U.S. Dept. of Justice and that

action named a company that employed plaintiff's father as a Vice President.  Plaintiff worked at that

same company (Atlas-Lederer) for one summer as a manual laborer; (E) after graduating college,

plaintiff worked within the technology industry for approx. one decade (i.e.: Price Waterhouse,

PricewaterhouseCoopers, Ariba, BroadVision, Oracle Corporation) without knowledge of any

intimate relevance or connectivity to WSGR, P.C., Stanford University ("Stanford") or the U.S.

departments so named earlier; (F) plaintiff applied to Stanford University's MBA program c. 2010/11

and referenced persons and facts relevant to the unlawful acts he endured at Ariba, BroadVision and

Oracle Corp. and Stanford may have made improper acceptance/denial decisions based on those at-

the-time-unknown-and-improper facts.  See Ex. #3; (G) plaintiff, in the last 4 years, has recalled

events, formulated theories and presented same in differing formats in several of the dockets named

herein in support of these suggestions.  See, as primary example, No. 17-55649 (C.A.9), ECF Docs

#27-40, esp. ECF Doc #57; (H) TAE concludes that plaintiff endured three instances of hostile work

environment, several instances of defamation and harassment, suffered health concerns based on

those conditions, held a pay-for-performance claim and, potentially, a civil claim under R.I.C.O. at

the time of his "divorce," a legal proceeding he suggests was conducted improperly, perhaps

intentionally so.  He further suggests his claims are not only still active, but may be worth, in

aggregate, $200 MM; (I) plaintiff suggests he held and holds similar claims from his experiences at

BroadVision (2004-2005), Oracle Corporation (2006-2008), and University of Chicago (2008); (J)

plaintiff was invited by Dr. Michael Boskin (of Stanford University, of Oracle Corporation's Board

of Directors) to visit Stanford University c. 2010-2011; (K) plaintiff received two unlawfully issued

"Stay Away Orders" from Stanford's Campus Security without just and accurate cause but has never

received such direction from persons he was invited by, visited or wrote to; (L) plaintiff's C.D. Cal.

action[1] suggests film companies (the major studios) depicted his life and the lives of family & friends

in many popular films and he is due remedy for the unlawful usage of that property.  Examples

include *Kramer v. Kramer* (1979), *Top Gun* (1986) and *A Few Good Men* (1992) and part of remedy

due includes disclosure as to reasoning for those depictions without his knowledge and consent; (M)

the liability and remedy due from Ariba, BroadVision and Oracle Corp. (i.e.: money, reputational

relief including a publicly disclosed <u>Findings of Fact and Conclusions of Law</u> document) has

transferred between and among several accountable parties and now appears to be held as a payable

by at least one, perhaps both, of the entities so named as defendants herein, ancillary circumstances

within notwithstanding the contrary.  See Ex. #1, letter dated May 22nd, 2018 to Hon. Judge Wilken

re: Request for Filing due to Pre-filing Order issued in No. 17-cv-505-CW; and (N) unjust logistical

complications impeding plaintiff's ability to proceed in the courts have been well-documented (i.e.:

access to law libraries denied or hindered, access to P.C.s and printers denied or limited, lawyers

breaching duties to plaintiff, court officers such as librarians defaming and harassing plaintiff, etc…).

### IV.    Law in support of claims

The statute of limitations ("SOL") for claims relating to this suit is unclear.  The base claim –

relating to the difference between plaintiff's earned and now-damaged intangible and tangible

---

[1] See *Thyme v. NBCUniversal, et al. (2017 C.D. Cal.),* No. 17-cv-2453 @ Complaint and FAC.

property – is limited by a combination of statute and case law, properly interpreted.  See *Blake v. Dickason*, C.A.10 (Colo.) 1993, 917 F.2d 749[2], 42 U.S.C. § 1988(a) and CCP § 338(b) relating to any "action for trespass upon or injury to real property."  Pursuant to these guidelines, the action would be subject to a 3-year statute of limitations timeframe.  Although this suit references claims that occurred many years prior to the complaint's filing, plaintiff was unaware, prior to 2013, of many of the assertions made within.  There are two theories making the three-year SOL timeframe potentially moot: (1) equitable tolling and (2) the dependency of the state's limitation's timeframe to be consistent with the United States Constitution.  It would be inconsistent with the purpose of the United States to steal, defame, or otherwise destroy a person's earned tangible and intangible property thus, perhaps, eliminating any limitations timeframe altogether.

Amend. XIV (U.S. Const.) states, in part, "[n]o state[3] shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."  There are three components supporting claims based upon defendants violating plaintiff's Amend. XIV rights: earnings-based privileged status, accurate property valuation and privacy.

---

[2] "Congress failed to specify a statute of limitations for civil rights claims under 42 U.S.C.S. § 1983. In 42 U.S.C.S. § 1988, however, Congress directed the courts to follow a three-step process to determine the limitations period […]: First, courts are to look to the laws of the United States so far as such laws are suitable to carry the civil and criminal rights statutes into effect. If no suitable federal rule exists, courts undertake the second step by considering application of state common law, as modified and changed by the constitution and statutes of the forum state. A third step asserts the predominance of the federal interest: courts are to apply state law only if it is not inconsistent with the United States Constitution and laws of the United States."

[3] In the context of this matter, relevant definitions include, but are not limited to, "the highest stage of development," "a person of high rank," "the operations, activities, or affairs of the government or ruling party […]: the sphere of administration and supreme political power of a government." *Webster's Third New Int'l Dictionary* (1993).

The property plaintiff seeks to acquire, reacquire, correct or otherwise accurately improve includes monetary property including past due wages, grade adjustments, corrections to currently errant credit history, correction to reported SAT scores (contained within an MBA application to Stanford University), correction to his criminal history (also improperly contained within an MBA application to Stanford University), information both factual and implied related to his personal relationships (i.e., his marital status as having never been married as per Ex. #3), and public records such as his *earned* income involving employment within more than 3 states (i.e.: California, S. Dakota, Illinois, Ohio).

The aforementioned tangible and intangible property has been negatively affected (i.e., tarnished) by the parties so named within either by their intentional neglect, their conspiring with governmental entities to interfere with plaintiff's work and educational experiences without his express permission, or by their otherwise improper acts in carrying out their duties.  In other words, defendants named within have harmed his reputation to a degree he cannot repair without the courts' intervention.

Plaintiff's reputation – the accurate contents held within his life's resume - is his property. Plaintiff cannot accurately report, as an example, the reason for his employment departures to a future employer without defendant entities' intervention and explanation.  Absent defendants' willing disclosure, the court must force them to respond, and force them to respond fully and with appropriate detail.

Furthermore, both named defendant entities within have operated as the "state" in some definition of the term, interacted directly with or has invited interaction with plaintiff, and may hold a legal obligation to plaintiff under any of the following arguments: (1) as stated, the entities so named as defendants within planned the unlawful acts plaintiff endured when he was employed by Ariba and Oracle Corporation and/or the educational/personal experiences plaintiff endured throughout his

entire life. See Ex. #3, (2) one or more of the entities so named as defendants planned the tortious acts (i.e.: assault and battery, harassment, defamation)[4] plaintiff has endured in San Francisco and Los Angeles from 2013 through present and thus separately violated the Due Process clause of Amend. XIV related to privacy rights, and (3) plaintiff is due legal representation in at least 4 ways as partially outlined in both Ex. #2 to this complaint and in the complaint found within *Wright v. Office of Public Defender, County of San Francisco; Silas Geneson; Morrison Foerster, et al.* (2016 S.F. Super. Ct., Cal.), No. CGC-16-550558 and defendants so name are either (a) empowered to resolve plaintiff's lack of legal representation or (b) have funding set aside for persons fitting plaintiff's description (i.e.: poverty-based, homeless, truthfulness of claim(s), counter-claim tied to a criminal action).[5]

Finally, plaintiff has suggested Stanford University, WSGR, P.C., and the U.S. departments named within have orchestrated, as one example, harassing conditions in plaintiff's workplace environment from 2000-2004, in having those same workplace colleagues defame him, and in having that same employer underpay him by, he contends, $1/3^{rd}$ of his work's properly-assessed value, a numeric estimate requiring explicit detailed disclosure or discovery to assess accuracy and to ensure on-the-record admission. See Ex. #3.

As such, the Due Process clause related to privacy is equally relevant. See *Obergefell v. Hodges* (2014 U.S.S.C.), 576 U.S. ____, Slip Opinion at 13 citing *Zablocki* v. *Redhail*, 434 U. S. 374 (1978) where "to recognize a right of privacy […]" "is…foundation[al] [to]…our society." *Obergefell* reasserted privacy rights as per *Lawrence* v. *Texas*, 539 U. S. 558 (2003) at 562, 567 related to issues which "touc[h] upon […] private human conduct" and include issues surrounding "the home."

---

[4] See *R. Raisonheimer v. City and County of San Francisco Police Dept., et al.* (2016 S.F. Super. Ct., Cal.), No. CGC-16-550063 at entries March-May, 2018 for examples of those occurrences.
[5] See 18 U.S.C. § 3006A and No. 17-55649 (C.A.9), an active criminal appeal in Federal court.

"[T]his reference seems to correspond to...an implied fundamental 'right of privacy.' *Griswold*, 381 U. S., at 486." *Obergefell,* Slip Opinion at pg.17 (C.J. Roberts, dissenting).

Plaintiff can only assume the intent of the aforementioned defendant actions was to educate. The state's argument – those governmental entities compelling WSGR and Stanford to embed legal concepts via situational enactments - would likely follow the following logic: while textbook education is beneficial, the endurance method - experiencing a right jab into the jaw from a short, female crack dealer while surrounded by that dealer's friends and colleagues to reduce probability of an earned and justified response – more thoroughly embeds understanding as to contextual differences as those differences relate to policy difficulty, remedy form and even expert opinion importance. In other words, there's a difference between what a textbook says and what occurs in day-to-day life. Nevertheless, neither WSGR nor Stanford obtained plaintiff's explicit permission to endure, recover from, and then comprehend these tortious occurrences via the creation of a research paper or pleading as plaintiff has done on perhaps 100 occasions over the past 4 years. See Ex. #4, *The Ariba Experience, Reinterpreted* or No. 15-17045 (C.A.9), ECF Doc #23, *Understanding U.S. Economic Function* as two examples of coerced intellectual output. For plaintiff, the process has been annoying, the output coerced. As knowledge of what is occurring to oneself is part of one's private life, defendants have violated plaintiff's right to privacy, have unlawfully hindered his liberty (i.e., via access to the world's niceties), and have debased property (i.e., reputation) he earned.

While plaintiff may want to continue interpreting many of his life's experiences via papers such as the one referenced in the exhibit list – and may need to in order to recover from the collective experience as a whole - he has earned the right to do so within an individually-assessed, earnings-based environment defined as a peaceful, quiet, logistically-lubricated, safe, secure, civilized and comfortable environment, one filled with competent and educated persons with warm, friendly, fun

and intelligent upbringings and personalities, persons maintaining similar backgrounds and

achievements as plaintiff (i.e.: SAT scores over 1200 on the 1991-1992 testing scale, athletically

inclined, socially pleasant and sincere, etc.).  See Ex. #3.

### V.     Remedy

42 U.S.C. § 1983 empowers remedy for violations of constitutional rights.

Plaintiff seeks any and all remedy components due him from named defendants within including

a preliminary hearing, logistical support required for this proceeding, disclosure as to all intrusive and

conspiring instances (i.e., those he endured at Ariba) defendants and their colleagues have

orchestrated, damages, and future legal representation (substitute or delivered from same entities, if

needed), costs and fees.  Plaintiff asserts a placeholder for damages = $200 MM.

Plaintiff seeks to discuss resolving the matter directly with both Stanford University's E. Mary

Magill and at least two representatives from WSGR's Managing Committee, those persons holding

management authority over the entire firm via preliminary hearing at the court's earliest convenience.

In fact, it is possible that either, or both, of the defendants may have remedy in their possession at

the time this complaint is received by the court.  If that is the case, a pre-response preliminary hearing

could serve as both the beginning and the end of this action.  During that hearing, WSGR, P.C. and

Stanford appears in person (represented by knowledgeable parties as to the underlying facts), admits

to the court and to plaintiff their involvement, explains their reasoning for that involvement, and

awards plaintiff partial or complete remedy for him to consider at that time.

Under such a circumstance, claims become less relevant, save for intended and proper meaning.

Instead, this initial filing may be considered a petition to compel a government officer to perform a

duty owed under 28 U.S.C. § 1361, presuming WSGR, P.C. and Stanford were acting with funding

provided by, and direction taken from, the U.S. government via the departments so named herein.

**VI.   Conclusion**

Complaint's purpose

Plaintiff is aware of the FRCP-empowered process that follows service, presuming the complaint is filed and served.  Due to time passed since enduring the situations referenced within, plaintiff seeks – and expects the court to demand – rapid resolution.  In other words, plaintiff does not expect an elongated pre-trial debate including responses to motion(s) to dismiss; he expects solutions discussed in a conference room perhaps even prior to service of the initiating papers.[6]  He simply has no more time to waste.

Preliminary hearing requested

Based on the content within, plaintiff requests the court schedule a preliminary hearing to discuss the proceeding, resolution of the matter and those related, or a discussion as to the invitation of counsel under 28 U.S.C. § 1915(e)(1) if rapid remedy does not appear possible during same hearing.

Finally, if pre-trial activities such as oppositional response are required, plaintiff will yield to defendants an amount of time to respond equal to the time so allowed by the rules of court, that timeframe's beginning stayed until such time as the preliminary hearing has been held and has concluded, at the court's discretion.

Respectfully,

Yutz McDougal

Date: 6/4/2018

---

[6] "'An appellate court must do what is necessary to render substantial justice.' *Ashcraft v. Tennessee*, 322 U.S. 143, 64 S.Ct. 921, 88 L.Ed. 1192 (1944).  'In disposing of cases before us it is our responsibility to make such disposition as justice may require.' *Id.* at p. 156, 64 S.Ct. at 927." *Moitie v. Federated Dep't Stores, Inc.*, 611 F.2d 1267 at 1270.  If an appellate court has such a mandate, so too does a trial court.  See FRE 201.

1

**EXHIBITS IN SUPPORT OF COMPLAINT**

2 Request to File Complaint pursuant to Pre-Filing Order within No. 17-cv-505-CW................Ex. 1

3 No. 17-55649 (C.A.9), ECF #39, Letter to US DOJ re: Legal Services due Plaintiff.....….........Ex. 2

4

5

**EXHIBITS VIA REFERENCE**

6 No. 17-55649 (C.A.9), ECF #24, FHW Resume……………………………………………………..Ex. 3

7 No. 17-55649 (C.A.9), ECF Doc #57 or the most recent version of the paper entitled *The Ariba*
8 *Experience, Reinterpreted*…………………………….…………………………..………………………….Ex. 4

9 *In re: Jesse F. Swartz, Jennifer McInerney* (2006 Marital Dissolution, State of Illinois), Docket..Ex. 5

10 *Swartz v. Oracle Corp., Ariba, Inc. et al.* (2011 N.D. Oh.), No. 11-cv-168 and No. 11-cv-221 esp.
ECF Doc #6…………………………………………………………………….………………………….Ex. 6
11

12 *Wright v. USICH, et al.* (2014 N.D. Cal.), No. 14-353-RS, esp. the FAC at ECF Doc #56……....Ex. 7

13 *Wright v. Pops McGovern, et al.* (2015 N.D. Cal.), No. 14-cv-5525 at ECF Doc #21 including claims
against the University of Chicago…………………………………………………………………Ex. 8
14

15 *Wright v. Marriott Int'l, et al.* (2013 S.F. Super. Ct., Cal.), No. CGC-13-536085, Complaint…...Ex. 9

16 *R. Raisonheimer v. City and County of San Francisco Police Dept., et al.* (2016 S.F. Super. Ct., Cal.),
No. CGC-16-550063, Complaint and relevant notices/claim letters (esp. docket entries between
17 April-May, 2018)…………………………………………………………………………………....Ex. 10

18 *Yutz McDougal, I v. ECS of San Francisco, et al.* (2016 S.F. Super. Ct., Cal.), No. CGC-16-550062,
19 Complaint and relevant notices/claim letters (esp. docket entries between April-May, 2018)..…Ex. 11

20 *Wright v. Office of Public Defender, County of San Francisco; Silas Geneson; Morrison Foerster; et*
*al.* (2016 S.F. Super. Ct., Cal.), No. CGC-16-550558, Complaint relating to rights to counsel…Ex. 12
21

22 *Thyme v. NBCUniversal LLC, et al.* (2017 C.D. Cal.), No. 17-cv-2453 at FAC……………..…Ex. 13

23

24

25

26

27

28

Complaint v. Stanford, WSGR (2018)

# EXHIBITS TO COMPLAINT

**EXHIBIT #1 to COMPLAINT**

Request to File Complaint pursuant to Pre-Filing Order within No. 17-cv-505-CW

Fr:     Franklin H. Wright (a/k/a, Jesse F. Swartz, Jr.)

To:     Claudia Wilken, Art. III Judge (N.D. Cal)

Re:     *In re: Wright*, No. 16-cv-505-CW and pre-filing order; request to file suit

Date:   May 22nd, 2018

Judge Wilken,

In the case so mentioned above, you issued a pre-filing order suggesting I am not permitted to file any additional cases without your permission. This letter serves as my request to file one last case v. Stanford and WSGR, P.C. See, in part, ECF Docs #27 through #60 in No. 17-55649 (C.A.9) re: Ariba.

The lawsuit I need to file would include claims stemming from my employment at Ariba, those claims and their remedy amounts having rolled between accountable parties (from Ariba to law firms to the U.S. DOJ, etc.). Remedy due or pursuit of same – in some form - now resides on the shoulders of both Stanford University and WSGR, P.C. See *R. Raisonheimer v. City and County of S.F.*, No. CGC-16-550063 (S.F. Super. Ct.) at docket entry of May 16th, 2018 re: visits to both entities.

Considering I have time to do more work I don't get paid for, please see the timeline below:



A case in 2006 where this Chicago law firm, retained by me, breached its duty (negligence, BOFD, etc.) to conduct proper discovery re: potential causation of marital dissolution. My claims re: Ariba employment could have been identified then. Remedy due from: HSPRD and Ariba.

A case in 2007 where I was accused of a felony. This firm represented me and they too could have identified claims I held re: employment and HSPRD. As they breached discovery duty, now they are accountable to me for remedy that may include the amount owed me from Ariba employment.

In re: my Ch. 7 Bankr. and 11 U.S.C. Sec. 704(a). Remedy for claims against employers rolled to HSPRD (accountable) which rolled to Breen Pugh. DOJ and WSGR failed to investigate and disclose to me results of investigation, if it occurred. Now DOJ and WSGR owe the remedy. I wasn't aware of 11 U.S.C. Sec. 704(a) until late '13, early '14 thus tolling limitations timeframe.

In re: homelessness, Phase I. In 42 U.S.C. – Ch. 119, there's a reference to case plans. The code is vague and misleading, but discovery surrounding proper usage of case plans specific to me would be pertinent as to rights breached at the time. Claims re: employment/HSPRD/DOJ could have been identified in 2010/2011 (Ohio) via proper case plan usage. Claims included claims against DOJ/WSGR re: Ch. 7 errors. Accountable: USICH (U.S. Interagency Counc. on Homelessness/U.S. cabinet) for remedy from DOJ/WSGR.



See *Wright v. Marriott Int'l, et al.* (S.F.Super. Ct., 2013), No. CGC-13-536085. The premise here is that counter-claims against tortfeasors have been the responsibility of San Francisco's Public Defender who breached their duties. Relevant to that case would be a discovery question to me: "Why did you drive to the Bay Area?" which would have led the S.F. Public Defender to the trail above. So now the S.F. Public Defender owes re: claims against the USICH and the US DOJ/WSGR.

See *Wright v. USICH, et al.* (N.D. Cal., 2013) No. 14-0353-RS.  This case never went to trial, but the premise here was that non-profits acting on behalf of this entity and funded/empowered by same breached duties and/or were negligent.  Proper case plan management would include assessing any and all legal claims I maintain.  Accountable: 5 S.F. non-profits; State of Cal.; USICH.

See *R. Raisonheimer v. City and County of S.F.* (S.F. Super. Ct.), No. CGC-16-550063 at docket entry of May 16th, 2018.  See also No. 17-55649 (C.A.9) at ECF Doc # 61 (The Ariba Experience).  Read the paper.  Now I'm suggesting that McKinsey & Co. and WSGR, P.C., with the U.S. cabinet and the judiciary's input, intentionally created my workplace difficulties for an undisclosed reason.  Actions against WSGR/Stanford would be to force their admission and uncover the reason(s) re: those acts.  My recent (May, 2018) visits to both Stanford and WSGR, PC was (1) to obtain their admission and (2) possibly b/c a client.

In the above diagram, claims against Ariba would have been obtainable in 2006 via proper discovery by HSPRD.  HSPRD's failure to perform their job function made them liable to me for the claims against Ariba.  Let's call the amount due from Ariba = $10 MM.  So HSPRD now owes me $10 MM.  Then, Breen Pugh could have discovered claims against Ariba and HSPRD via discovery with me in 2007-2008.  As they failed to perform proper discovery, now Breen, Pugh owes me $10 MM plus an amount from the delayed enjoyment of same.  This "rolling" process continues to all parties outlined in the diagram above that may have accountability to uncover any claim I maintain, which I had documented in *Swartz v. Ariba, Oracle Corp., et al.* (2011 N.D. Oh.) at ECF Doc #6.  The claim v. Ariba was tacitly admitted in that case by opposing counsel under FRCP 8(b)(1) and 8(b)(6) in 2011, a fact I was unaware of until 2013/2014 when I studied in the Burton Building.

The lawsuit I would file would be against parties forming the end state of that rolling process (against both Stanford University and WSGR, P.C.) and would likely contain three parts:

(1) Request for counsel.

Again, the argument would cite reasonable interpretation of 42 U.S.C. – Ch. 119 re: case plans and legal assistance applied to my situation.  There is also a State of Cal. statute that suggests both Stanford and WSGR, P.C. may be recipients of funding attached to one or both codes, that funding earmarked for someone in my position (i.e.: homeless or impoverished).  See also *Wright v. Office of Public Defender, et al.*, No. CGC-16-550558 (2016, S.F. Super. Ct.), Complaint for more detail as to that argument.

//

(2) <u>Disclosure.</u>

I'd seek admission from WSGR, P.C. as to my Ariba employment interpretation. Obviously, I'd suggest WSGR had been involved in my life for a much longer duration than just my Ariba experience.  See No. 17-55649 (C.A.9) at ECF Doc # ___ (Please see the latest paper in the referenced C.A.9 docket entitled "The Ariba Experience").

As you may be aware, John A. Wilson of WSGR, P.C. is my great-Uncle.  I was told he paid for my secondary school education at WRA.  I now think that a falsity.  The U.S. government may have paid for that experience.

(3) <u>Remedy</u>

The remedy I seek is for all the claims still active from the last accountable party accountable to investigate, as per the logic formed in the above diagram.  Monetary remedy may not be from these entities, these entities may end up forming my counsel (a team) and be thus charged for assessing and obtaining remedy for any and all claims I maintain.

In other words, I would prefer WSGR, P.C. and Stanford to become partners, not adversaries and would state as much within a preliminary motion to discuss the matter, preferably with both Dean Magill of Stanford's Law School and a member of the managing committee from WSGR, P.C. during pre-trial.

I'd appreciate a response indicating approval or denial of this request to file via e-mail to frank.wright9@gmail.com.

I currently reside at 201 8th St., San Francisco, CA 94103.

Respectfully,

__s/____*Franklin*_____
Franklin H. Wright
a/k/a Jesse F. Swartz, Jr.

**EXHIBIT #2 to COMPLAINT**

No. 17-55649 (C.A.9), ECF #39, Letter to US DOJ re: Legal Services due Plaintiff

```
===========================================
              FOX PLAZA
         1390 MARKET ST LBBY
            SAN FRANCISCO
                 CA
             94102-9995
             0568140003
04/16/2018      (800)275-8777   2:58 PM
===========================================
===========================================
Product                   Sale        Final
Description               Qty         Price

First-Class                 1         $1.00
Mail
Large Envelope
    (Domestic)
    (WASHINGTON, DC  20530)
    (Weight:0 Lb 0.90 Oz)
    (Estimated Delivery Date)
    (Thursday 04/19/2018)

Total                                 $1.00

Debit Card Remit'd                    $1.00
    (Card Name:VISA)
    (Account #:XXXXXXXXXXXX7799)
    (Approval #:      )
    (Transaction #:833)
    (Receipt #:015385)
    (Debit Card Purchase:$1.00)
    (Cash Back:$0.00)
    (Entry Mode:Chip)
    (AID:A0000000980840)
    (Application Label:US DEBIT)
    (PIN:Verified by PIN)
    (Cryptogram:10C970ED1A6890A1)
    (ARC:00)
    (CVR:420000)
    (IAD:06010A03600000)
    (TSI:6800)
    (TVR:8000048000)

In a hurry? Self-service kiosks offer
```

April 5th, 2018

U.S. Department of Justice
c/o Jeffrey Sessions, Attorney General
950 Pennsylvania Avenue, NW
Washington, DC 20530-0001

cc:    Sec. Ross, U.S. Department of Commerce
       Sec. Acosta, U.S. Department of Labor
       Chairman Clayton, Securities and Exchange Commission
       Sec. Azar, U.S. Department of Health and Human Services

Re:    Endless Continuation: The Reverse Class Action

Dear Mr. Sessions,

I'd like to bring you into the fold on some past due items requiring your attention.

I have submitted, via usajobs.gov, at least 4 letters with increasing levels of detail over the past 8
days and those letters correspond to information contained in a Ch.7 bankruptcy filing from the
Northern District of Illinois from 2009 to 2010.  See *In re: Jesse F. Swartz*, No. 09-XXXX
(ND.Ill.Bankr., 2009).

In that filing I suggested I held claims against former employers and have since learned that I
may hold claims against not only a therapist, but also potentially against a former girlfriend who
may not have been my lawful wife (both women likely maintained training in identifying
symptoms linked to abusive conditions in both educational and employment contexts.  It appears
I endured both and they were witnesses to the symptoms that resulted).

By now you've likely derived a few conclusions as to where this is going.  As the only one with
the actual power as to what direction my case(s) take, I am telling you precisely where this is
going.  From my seat, there are only three possibilities as to explaining what occurred to me:

    (1)    My life was a giant training exercise and I did not knowingly and willfully agree
           to participate in those exercises.  The liability is therefore on any and all persons
           and entities who unlawfully utilized their power (i.e., your post(s), family
           members, Congressional and Judicial leaders, the Republican and/or Democratic
           Party leaders, etc…) to hijack my life's direction for some unknown reason;

    (2)    My life's events are true and actual and the parties and entities so named (i.e.,
           Ariba, BroadVision, Oracle Corp., U of C, etc.) are independently liable;

    (3)    Both (1) and (2) are correct.

In each of the above three scenarios, this is what I believe needs to occur to remedy the matters:

    (a)    Procedurally, a reverse class action in either N.D. Cal. or N.D. Ill., a single case,
           is filed with me as the sole plaintiff against all persons and entities I maintain
           claims against.  I expect it to be tried and I expect at least 100 defendants;

(b)     As far as future legal funding for my civil claims is concerned:

(1) the U.S. DOJ is liable [via the errors and omission in my Ch. 7 bankruptcy from 2009-2010, see 11 U.S.C. § 704(a)(1) and (a)(4) when compared to that filing's docket];

(2) either Jeffrey A. Whitehead or/and WSGR, P.C. is/are liable for their errors as they are related to my bankruptcy and thus owe(s) for all future costs, as well as damages;

(3) the University of Chicago may be (is) liable for all litigation-related costs related to claims I maintained when I arrived on campus and, as such, owes for damages I endured as a result of their misdeeds (i.e., their negligence, harassment, defamation, breach of U of C's various policies and thus, agreements and contracts);

(4) any and all law firms who maintain *pro bono* programs whereby either (A) I contacted them directly or (B) those firms became aware of my cases/ignored the case(s) and are thus liable for not only the cost of future litigation that will be occurring but also for damages to me to date as a result of their negligence;

(5) any and all law firms who obtained federal or state funding directed toward poverty-based programs such as those serving the "homeless" population, a population I have unwillingly joined from late 2010 through today, a designation which may have been consistent due to a) definitional reasoning and b) a possible unlawful housing situation which was substandard and perhaps even considered condemnable housing (Akron, Ohio: 2011-2013);

(6) the U.S. DOJ is liable for counter-claims I maintained whereby the Federal Public Defender has accountability to not only defend prosecution, but also to file counter-claims on my behalf when the scenario so calls for same;

(7) any other lawful right to counsel[1] the record supports that I maintain.

I have been in one-way communication with a friend from college named David D. Streicker of Polsinelli (Chicago, IL) over the last 3 years but have not retained his firm because we have not met face-to-face nor have we solidified terms and conditions for his firm's representation as to me and some or all of my claims.

I would expect the terms and conditions negotiation process between me and a firm to last no fewer than 30 days with more than 10 face-to-face meetings of between 1 and 3 hours each,

---

[1] Other rights to counsel include (1) a benefit I paid for, but did not receive while employed by Oracle Corporation (2006-2007) related to legal services; (2) enforcement of contractual terms via a substitute attorney related to misrepresentation by Todd Pugh and Tom Breen (2007-2008); and (3) related misrepresentation/legal malpractice claims from State court actions in the State of Cal. (2013-2017).

those meetings *required to occur* prior to my explicit signing of those as-of-yet un-agreed to terms and conditions. No wayward outlying priests.

While I have docketed *preliminary* terms in C.A.9, I would expect, and your department should understand, that I will need to review *explicit* terms & conditions prior to any firm acting on my behalf. As such a step has not yet occurred, we are very early in a representation arrangement process that may yield significant market-based corrections (i.e., impact film studio mergers both past and present) and will likely have serious criminal implications.

I do not intend to permit early civil claim resolution and I expect to be heavily involved in the depositioning process for both criminal and civil depositions (i.e., I intend to direct them, I will ask the guilty party questions and will do so in person) regardless of the near or long term impact to my life.

If any agreements as to preliminary settlements or representation proof have been shown to a court or this department, they have been inked in deceit and are therefore null and void.

I am aware of persons' and entities' interest in the following:

    (1) Coercing me to run for governmental office.

        I have already noted the only reasonable and logical conclusion related to U.S. government work and the two major parties. My preliminary conclusion is as follows: the party system is faulty and should be disallowed as they have become fact ignorant (i.e., reasonless). They have been used to control most of the wealth distribution in the U.S. without the obligatory and required objective reason (i.e., qualifications).

        As such, the U.S. government requires restructuring and the process that permits and encourages that restructuring is the Ch. 11 Bankruptcy process. Such a process would be focused upon alleviating the U.S. Federal debt, the review and rewrite of all laws for precision, accuracy, logic and reasoning; the removal of conflicts of interest; and […] (such a conclusion gels with a previously claimed-to-be-intended metaphor where I stated in a governmental filing: "I am the United States").

    (2) Coercing me into government service.

        Whether via forcing me to work in a *qui tam* capacity related to homelessness (see *Wright v. USICH, et al.*, No. 14-0353-RS) or via intentionally tampering with letters and computer screens I have written or interacted with (i.e., "Click here to agree to terms"), I have no interest in near-term governmental work.

    (3) Coercing me into a job within Media and Entertainment.

        It appears I maintain highly valuable claims which may give me rights to owning either a) a U.S.-based media and entertainment bell-weather or b) all U.S.-based media and entertainment companies. See *Thyme v. NBCUniversal LLC, et al.* (2017, C.D. Cal.).

Quite obviously, to deflect these claims and avoid loss of control, these companies (and the political parties they integrate with) would, as a defense, both a) merge and b) inflate themselves to keep their market capitalization high and deflect a court-based takeover.

The US DOJ, a conspiring entity in such an action, is permitting monopolies and duopolies to be formed in this industry in violation of the Sherman Antitrust Act.

Judges, also conspiring and in violation of their own canons, will allow the media and entertainment entities to consolidate and their market share will grow because the judicial system uses the film industry to redirect wealth. The "justice system" desires to remain in control of this industry (a conflict of interest).

The U.S. Federal Reserve Bank, acting outside the bounds of their conflict-free creational intention could - and has - kept interest rates irresponsibly low and simultaneously flooded the market with irresponsible capital to permit such M&A activity, protected by the very Media and Entertainment companies who would have reported the malfeasance.

Corroborating central banks (i.e., China, Japan) have mirrored the U.S. Federal Reserve Bank's errors and are also involved in the conspiracy as what is good for the wealthy in China (i.e., TCP) is good for the two political parties in the U.S. (i.e., please take note of the financial returns of *Blank Panther* (the movie), the cast's capabilities, the cast's gender and ethnicities, and the source of that film's revenue generation when compared to an unbiased review of the film's quality. Note also the possibility that physical theaters have been nearly empty).

So no, I will not take a job in media or entertainment as it appears I may already own that industry and I plan on firing most actors who suck balls. And Iger. And the U.S. DOJ and Judges are out.

(4) As may be clear, I cannot achieve remedy in the very courts that have breached conflicts of interest so severely. Therefore, it appears I am down for the count.

In the rare case this letter finds someone at the U.S. DOJ who does his or her employment function properly, I say this: we are at the beginning and I expect a very long war to ensue.

Sincerely,

__s/_Franklin Wright____
Franklin H. Wright
frank.wright9@gmail.com

cc:    Central Intelligence Agency, c/o Vladimir Putin, Class of 197X, St. Petersburg, Russia

Enclosure:    ___ related letters submitted to the noted cabinet leaders via usajobs.gov between March 30th, 2018 and today's date (about 15-20 pages).

See also 17-55649 (C.A. 9), e.g. ECF Docs...
is what I wrote on version mailed

Page 4 of 4